In re MANDEL.

Ex parte MANDEL.

(District Court, S. D. New York. April 13, 1915.)

1. BANKS AND BANKING ☞4—REGULATIONS—VALIDITY.
   The business of private banking is subject to general regulation by the state, as embodied in Banking Law N. Y. (Laws 1914, c. 369) §§ 57, 60, empowering the superintendent of banks to seize the property of a pri-vate banker where his business is in an unsafe condition, and giving the banker within 10 days thereafter the right to apply for restitution of possession, and where the superintendent of banks seized possession of the goods of a private banker because his bank was thought unsafe, it was only an incident to the right of public control that the banker lost possession which he might have protected against process in a criminal prosecution.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 3; Dec. Dig. ☞4.]

2. BANKRUPTCY ☞242—DELIVERY OF PAPERS TO RECEIVER IN BANKRUPTCY—POWER OF UNITED STATES DISTRICT COURT;
   The superintendent of banks of New York, acting under Banking Law. N. Y. (Laws 1914, c. 369) § 57, took possession of a private banker's assets and books and papers. Subsequently the superintendent was appointed receiver in bankruptcy. The private banker surrendered the books without imposing conditions, and did not suggest any limitation in their use for eight months. Held, that the United States District Court would not compel the district attorney of New York to deliver to the receiver the books and papers about to be used in the trial of the banker in the state' court, because if there were any privilege it was lost from the failure to assert it at the outset.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 399-401; Dec. Dig. 242.]

3. BANKS AND BANKING ☞17—STATUTORY PROVISIONS—VISITATORIAL POWERS.
   A private banker, continuing in business as such after taking effect of Banking Law N. Y. (Laws 1914, c. 369), is subject to the visitatorial powers given the superintendent of banks by the act.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 21, 22; Dec. Dig. ☞17.]

In Bankruptcy. In the matter of Adolph Mandel, a bankrupt. On motion by Adolph Mandel to compel the district attorney of New York to deliver to the receiver in bankruptcy books and papers. Denied.

This is a motion to compel the district attorney of New York to deliver to Mandel's receiver in bankruptcy books and papers which he is about to use in the trial of an indictment in the state court. Mandel was a private banker doing business in the city of New York under a certificate from the comptroller of the state issued under subdivision 5 of section 29d of chapter 348 of the Laws of 1910. On August 3, 1914, the superintendent of banks of that state took possession of all his assets, acting under section 57 of chapter 369 of the Laws of 1914, and among them he got the books and papers in question. On August 5th a petition was filed in this court looking towards Mandel's adjudication in bankruptcy, which was followed on November 11, 1914, by the appointment of the superintendent of banks as the receiver in bankruptcy. Mandel insists that the original seizure of his books was illegal under the state law and that the receiver's possession shares in the original illegality,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that he has, therefore, never had any opportunity to assert his privilege against exposure through the use of the books, and that the only method practical for asserting it is by getting them back to the possession of the receiver and instructing him that they are not to be used in the criminal prosecution.

Leon Lauterstein, of New York City, for bankrupt.

Jeremiah T. Mahoney, of New York City, for receiver.

Charles A. Perkins, of New York City, for district attorney.

LEARNED HAND, District Judge (after stating the facts as above). [1, 2] Section 57 of the Banking Law of New York gives power to the superintendent of banks to seize the property of a private banker if his business is in an unsafe condition. Section 60 gives the banker within 10 days thereafter the right to apply for a restitution of possession. The business of private banking is certainly subject to general regulation, such as that of the New York Banking Law, and when the superintendent of banks seized possession of the goods of Mandel, because he thought his bank unsafe, it may have been an incident, but it was only an incident, of the right of public control, that he lost a possession which he might have protected against direct process in a criminal prosecution. The incident is "one of the misfortunes of" insolvency "if it follows crime." Matter of Harris, 221 U. S. 274, 279, 31 Sup. Ct. 557, 558, 55 L. Ed. 732. Matter of Harris did not depend upon the provisions intended to safeguard Harris, for Justice Holmes especially says they were not enough, if the privilege had existed, and that only statutory immunity would have served. It turned upon the theory that, since the bankruptcy court was entitled to possession and afterwards to title, the incidental subjection of the bankrupt to possible exposure did not deprive the court of those rights. The case is applicable here, for, if the superintendent of banks was entitled to possession of the assets for a public administration, the incidental danger of exposure would not have entitled Mandel to refuse possession, had he done so at the time.

The question remains whether this court, having an unconditional possession, should refuse to assist a criminal prosecution. Strictly speaking, perhaps it is not necessary to say what rights Mandel might have got if he had refused to allow the superintendent of banks to take possession, except on condition that the books should not be used against him, though Matter of Harris, supra, seems to decide it. If Mandel had insisted upon the protection of an order such as Harris got, perhaps he might have got it; perhaps not. In fact, he made no such condition, but surrendered the books and has not suggested any limitation in their use for eight months. The privilege must always be claimed, or it is lost, call it by waiver or by failure of conditions precedent, and any right, if he had it, he must have asserted at the outset. As to the propriety of allowing any public authority to use the books, I have considered that question and decided it in Re Tracy (D. C.) 177 Fed. 532.

[3] It is finally suggested that section 502 prevented any action by the superintendent of banks till November 1, 1914. The effect of that section was only to except from repeal chapter 348 of Laws of 1910

It does not follow that article 4 of the Banking Law of 1914 did not go into effect, while article 3a of the earlier law remained unrepealed. On the contrary, it is evident that article 4 was meant to go into effect earlier at least in some respects, because section 172 especially mentioned July 31st as the day after which a private banker must get a certificate from the superintendent of banks. It is therefore possible that between August 1st and November 1st, private bankers were subject to both statutes. However that may be, the question is irrelevant, because the Banking Law of 1914 gave the superintendent of banks visitatorial powers whenever the banker's position became unsafe, and that he was acting within his power is too obvious for argument. By continuing in business as a private banker, Mandel became subject to such powers.

Weeks v. U. S., 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, does not touch the case, because there the original acquisition of the property was illegal, and the accused attempted to get it back before trial, as he had the right to do. If Mandel were convicted by this evidence, and upon appeal it were decided that he was entitled on this motion to have had the books returned to the receiver's custody, then the case would be pertinent. It has no bearing upon whether the books should go back to the receiver, which is the question here.

Motion denied.