**In re 25 GRAND JURY SUBPOENAS DATED OCTOBER 21, OCTOBER 22, AND DECEMBER 3, 1986.**

No. SM 86–98.

United States District Court,
N.D. Indiana,
South Bend Division.

March 2, 1987.

R. Michael Parker, Elkhart, Ind., for petitioner.

Thomas O. Plouff, Asst. U.S. Atty., South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is before the court on two motions to quash grand jury subpoenas. The first motion, filed on November 5, 1986, requests an order quashing twenty-five (25) subpoenas issued October 21 and October 22, 1986, each listing twelve (12) categories of documents, and served on each subpoenaed entity. The second motion filed January 5, 1987, requests an order quashing seven (7) subpoenas issued on December 3, 1986, each listing twelve (12) categories of documents, and by agreement served upon an individual designated to accept service for the seven (7) entities. The government filed a written response on January 17, 1987. In addition, the court heard oral argument on November 6, 1986 and January 16, 1987.

The issue before the court is the alleged tension between the "act of production" doctrine announced in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), further described in *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984),[1] and the "collective entity rule" expressed in *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). This trilogy of cases sets the parameters which guide the analysis of the facts and circumstances before this court.

A brief synopsis of the facts and circumstances of this case is critical. The petitioner is the target of a grand jury investigation. The government served subpoenas upon a number of entities, in which the petitioner is the principal shareholder, partner or settlor. Some of the entities are trusts which the petitioner states do not exist because the settlor "never executed trust instrument." The petitioner states that he is not the custodian nor director or officer of several of the other entities. Nevertheless, the petitioner has agreed to provide "certain documents evidencing transactions between third persons and [the entity]." Further, the petitioner states that he is unaware of an entity named on one subpoena and "therefore, [has] no records for [that] entity." The majority of the remaining subpoenas were directed toward corporations or partnerships. The petitioner states that:

> The equity interests and/or partnership interests (excluding an interest of less than 5% [in one entity] of the subpoenaed

---

1. A few lower courts have utilized the "constructive use immunity" to escape the dilemma. The Supreme Court in *United States v. Doe* held that "[w]e decline to extend the jurisdiction of courts to include prospective grants of use immunity in the absence of the formal request that the statute requires." *United States v. Doe*, 465 U.S. 605, 616, 104 S.Ct. 1237, 1244, 79 L.Ed.2d 552 (1984). (emphasis added)

entities have never been owned outside of the family.

The petitioner asserts his personal Fourth and Fifth Amendment rights with respect to the documents of the subpoenaed entities. It is argued that since the entities are closely held corporations or partnerships in which all the stock is held by family members or partnerships in which all interest is held by family members that the act of production would be compelled testimony which would be incriminating.

■ The government bears the initial burden to demonstrate that the subpoenas do not violate the Fourth and Fifth Amendment restrictions or the provisions of Rule 17(c) of the Federal Rules of Criminal Procedure. "To be valid a subpoena *duces tecum* must meet the following requirements:

(1) The documents requested must be relevant to the subject matter of a legitimate grand jury investigation;

(2) The subpoena must describe the materials to be produced with reasonable particularity; and

(3) The documents may not cover more than a reasonable period of time.

*(Under Seal) v. United States*, 634 F.Supp. 732, 733 (E.D.N.Y.1986); *In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F.Supp. 1078, 1084 (E.D.N.Y.1978). The petitioner is being investigated for possible violations of Sections 841(a)(1) and 846 of Title 21 of the United States Code and Section 7201 of Title 26 of the United States Code. The subpoenaed documents are relevant to the grand jury's investigation. Further, the twelve (12) categories listed in each subpoena describe the items requested "with sufficient particularity that the person commanded to comply will know what he is being directed to produce." *(Under Seal) v. United States*, 634 F.Supp. at 733; *In re Corrado Brothers, Inc.*, 367 F.Supp. 1126, 1132 (D.Del.1973). The time period which the requested documents cover, 1981 through 1985, is not unreasonable.

Since 1886 the Supreme Court of the United States has steadfastly held that "any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime" would violate the Fifth Amendment. *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886); *accord, Bellis v. United States*, 417 U.S. 85, 88–89, 94 S.Ct. 2179, 2182–2183, 40 L.Ed.2d 678 (1974); *United States v. White*, 322 U.S. 694, 697–699, 64 S.Ct. 1248, 1250–1251, 88 L.Ed. 1542 (1944). The analysis of the Fifth Amendment privilege, as applied to production of documents of collective entities, has evolved from a focus on the protection of personal privacy and property to whether an "act" of production is testimonial and potentially incriminating. *See, United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957); *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *In re Harris*, 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 73 (1911); *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). Recently the lower courts have focused on the act of production and whether that is testimonial and potentially incriminating. *See, In re Subpoena Duces Tecum*, 795 F.2d 904 (11th Cir.1986); *United States v. Lang*, 792 F.2d 1235 (4th Cir.1986) (Judge Swygert), *cert. denied*, —— U.S. ——, 107 S.Ct. 574, 93 L.Ed.2d 578 (1986); *In re Sealed Case*, 791 F.2d 179 (D.C.Cir.1986) (Judge Scalia); *In re Grand Jury Subpoena*, 784 F.2d 857 (8th Cir.1986), *cert. granted*, —— U.S. ——, 107 S.Ct. 59, 93 L.Ed.2d 18 (1986), *cert. dismissed*, —— U.S. ——, 107 S.Ct. 918, 93 L.Ed.2d 865 (1987); *In re Grand Jury Subpoenas Issued to Thirteen Corps.*, 775 F.2d 43 (2d Cir.1985), *cert. denied sub nom, Roe v. United States*, —— U.S. ——, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986); *In re Grand Jury Proceedings*, 771 F.2d 143

(6th Cir.1985) (en banc), *cert. denied sub nom, Morganstern v. United States,* — U.S. ——, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985); *In re Grand Jury Matter (Brown),* 768 F.2d 525 (3d Cir.1985) (en banc); *In re Kave,* 760 F.2d 343 (1st Cir.1985); *In re Grand Jury Proceedings,* 759 F.2d 1418 (9th Cir.1985); *In re Grand Jury Proceedings (Vargas),* 727 F.2d 941 (10th Cir.1984), *cert. denied sub nom, Vargas v. United States,* 469 U.S. 819, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984); *United States v. Porter,* 711 F.2d 1397 (7th Cir.1983); *United States v. Kent,* 646 F.2d 963 (5th Cir.1981); *Pacific Mutual Life Ins. Co. v. American National Bank and Trust Co. of Chicago,* 649 F.Supp. 281 (N.D.Ill.1986); *In re Grand Jury Subpoena,* 635 F.Supp. 569 (N.D.Ga.1986); *(Under Seal) v. United States,* 634 F.Supp. 732 (E.D.N.Y.1986); *In re Grand Jury Subpoenas Duces Tecum Served Upon 22nd Ave. Drug, Inc.,* 633 F.Supp. 419 (S.D.Fla.1986); *United States v. McPhaul,* 617 F.Supp. 58 (D.C.N.C.1985), *appeal dismissed,* 786 F.2d 1158 (4th Cir. 1986); *United States v. Katin,* 109 F.R.D. 406 (D.Mass.1986). That focus and subsequent analysis creates significantly different results depending on whether the facts and circumstances include subpoenas to individual persons, sole proprietorships, partnerships, unincorporated associations or corporations.

It is clear that the Fifth Amendment privilege protects compelled testimony and production of personal papers by an individual. In addition, since *United States v. Doe,* the owner of a sole proprietorship may not be compelled to produce certain business records where production of the documents would relieve the government of the need to authenticate the documents. See *United States v. Doe,* 465 U.S. at 610–614, 104 S.Ct. at 1240–1243; *Fisher v. United States,* 425 U.S. at 410, 96 S.Ct. at 1580. The basis of the Court's decision in *Doe* is the intimate relationship between an individual who owns a sole proprietorship and the records of the sole proprietorship. *Id.* Since the owner of a sole proprietorship is the only individual who could have created the records, compelling him to produce them is testimonial and depending on the content could be incriminating. This case does not involve subpoenas issued to either an individual or a sole proprietorship.

In this case subpoenas were served on some partnerships. The petitioner argues that because the interests in the partnerships are almost exclusively held by the petitioner and/or his family that the analysis of *Doe* should be applied. However, the express language of *Doe* which stresses the unique relationship between the owner of a sole proprietorship and the records of that proprietorship limits its application. The facts and circumstances related to the petitioner's claims as to the partnership records are analogous to the claims of the petitioner in *Matter of September, 1975 Special Grand Jury,* 435 F.Supp. 538 (N.D. Ind.1977). In that case the partnership consisted of a husband and wife. The grand jury subpoenaed the partnership books and records. Based on the *Bellis* decision, Judge McNagny held that "[t]he fact that partners are husband and wife does not alter the applicability of Indiana partnership law." *Id.,* at 543. In *Bellis,* "[t]he Supreme Court, relying on its earlier opinion in *United States v. White, supra,* held that the privilege was not available since the partnership had an institutional identity and the petitioner held the records in a representative, not a personal capacity." *Id.* Further, no privilege exists "where by their character and the rules applicable to them, the books and papers are held subject to examination of the [state]." *Bellis,* 417 U.S. at 92, 94 S.Ct. at 2185; *Wilson,* 221 U.S. at 382–385, 31 S.Ct. at 545–546. Indiana partnership law provides:

> Partnership is an association of two or more persons to carry on as co-owners a business for profit.
> I.C. 23–4–1–6(1).
> The law of agency shall apply under this act.
> I.C. 23–4–1–4(3)
> Unless authorized by the other partners or unless they have abandoned the business, one (1) or more but not less than all

the partners have no authority to ... confess a judgment.

I.C. 23–4–1–9(3)(d)

An admission or representation made by any partner concerning partnership affairs within the scope of his authority as conferred by this act is evidence against the partnership.

I.C. 23–4–1–11.

The partnership books shall be kept subject to any agreement between the partners, at the principal place of business of the partnership, and every partner shall at all times have access to and may inspect and copy any of them.

I.C. 23–4–1–19.

The petitioner does not allege that the partnerships which have been served with subpoenas are not institutional entities. In fact, a significant portion of the partnership interests are held by other institutional entities. The Court in *Bellis* first examined the structure of the partnership. *Bellis*, 417 U.S. at 96–97, 94 S.Ct. at 2187. The next step in the analysis under *Bellis* is to decide whether the petitioner holds the subpoenaed documents in a personal or representative capacity. All of the documents requested in the twelve categories in the subpoenas are business of financial records of the subpoenaed entities. The partnerships exist pursuant to Indiana law and as required by Indiana law the petitioner holds the partnership business or financial records in a representative capacity. I.C. 23–4–1–19; *accord, Bellis v. United States*, 417 U.S. at 98–99, 94 S.Ct. at 2187–2188; *Pacific Mutual Life*, 649 F.Supp. at 288; *In re Grand Jury Subpoena Duces Tecum*, 605 F.Supp. 174, 176 (E.D.N.Y.1985); *Matter of September, 1975 Special Grand Jury*, 435 F.Supp. at 543.

*Bellis* was decided before the Court announced the "act of production" doctrine. Therefore, *Bellis* does not control the act of production issue. The petitioner argues that the language of *Bellis* in light of the Court's opinions in *Fisher* and *Doe* creates a privilege for the petitioner. *See, Bellis*, 417 U.S. at 101, 94 S.Ct. at 2189; *In re Grand Jury Subpoena Duces Tecum*, 605

F.Supp. at 176. Specifically the language in *Bellis* which left open that possibility is that if the case "involved a small family partnership or if there were some preexisting relationship of confidentiality among the partners" the outcome might be different. *Id.* The Court in *Fisher* held that the questions relevant to the issues of testimonial production do not lend themselves to categorical answers but instead depend on the facts and circumstances of particular cases. *Fisher*, 425 U.S. at 410, 96 S.Ct. at 1580. However, *Fisher* also holds that "despite *Boyd* neither a partnership nor individual partners are shielded from compelled production of partnership records on self-incrimination grounds." *Fisher*, 425 U.S. at 408, 96 S.Ct. at 1579, citing, *Bellis*, 417 U.S. at 85, 94 S.Ct. at 2181; *accord, Pacific Mutual Life*, 649 F.Supp. at 288. "The fact that the documents may have been written by the person asserting the privilege is insufficient to trigger the privilege." *Id.*, 425 U.S. at 410 fn. 11, 96 S.Ct. at 1580, *citing, Wilson*, 221 U.S. at 378, 31 S.Ct. at 543.

■ In this case the petitioner has stated that the interests in the subpoenaed partnerships are held by corporations and two sons; none of the subpoenaed documents were created involuntarily. Therefore, there is no compelled personal testimonial implication under the Fifth Amendment for any of the partnership records sought by the subpoenas in this case. Further, Indiana partnership law. I.C. 23–4–1–4(3) would permit the appointment of an agent to produce the records, thereby avoiding the alleged problems of the petitioner.

■ Since *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), a collective entity has not been permitted to claim a Fifth Amendment privilege. Neither may collective entity officers or custodians assert a personal right to avoid production of the collective entity's documents. *United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944); *Wilson v. United States*, 221 U.S. 361, 378–79, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911). The rationale is that the "custodians assume

the rights, duties, and privileges of the artificial entity of which they are agents or officers and they are bound by its obligations." *Id.*

The Indiana General Corporation Act states in pertinent part:

Each corporation shall keep correct and complete books of account and minutes of the proceedings of its shareholders and directors; and shall keep at its principal office an original or a duplicate stock register or transfer book, or, in case such corporation employs a stock registrar or transfer agent in this or any other state, a complete and accurate shareholders' list giving the names and addresses of all shareholders and the number and classes of shares held by each. All such books, records and lists of a corporation shall be open to inspection and examination during the usual business hours for all proper purposes by every shareholder of the corporation, or his duly authorized agent or attorney. Upon the written request of any shareholder of a corporation, the corporation shall mail to such shareholder its most recent annual financial statements showing in reasonable detail its assets and liabilities and the results of its operations.

I.C. 23-1-2-14.

(a) Each corporation shall have the capacity to act possessed by natural persons, but shall have authority to perform only such acts as are necessary, convenient or expedient to accomplish the purposes for which it is formed and such as are not repugnant to law.

(b) Subject to any limitations or restrictions imposed by law or the articles of incorporation each corporation shall have the following general rights, privileges and powers:

(1) to continue as a corporation under its corporate name for the period limited in its articles of incorporation, or, if the period is not so limited, then perpetually;

(2) to sue and be sued in its corporate name; ...

(8) to appoint such officers and agents as the business of the corporation may require, and to define their duties and fix their compensation;

I.C. 23-1-2-2

The legal analysis of the partnership subpoenas is equally applicable to the corporate documents which have been subpoenaed. Therefore that discussion need not be repeated here.

Although the petitioner alleges that production of the documents of the collective entities subpoenaed will compel a testimonial act which may be incriminating, the facts do not support that conclusion. The petitioner merely holds the documents in a representative capacity not as an individual and production of the records is not a testimonial act of the custodian. *In re Grand Jury Proceedings,* 771 F.2d 143, 148 (6th Cir.1985) (en banc). The corporations' obligation is to produce the subpoenaed documents and that obligation is unaffected by the petitioner's personal Fifth Amendment privilege. *Accord, United States v. Lang,* 792 F.2d at 1239–1241; *In re Grand Jury Subpoenas Issued to Thirteen Corps.,* 775 F.2d at 48; *In re Two Grand Jury Subpoenas Duces Tecum,* 769 F.2d at 57; *United States v. Barth,* 745 F.2d 184, 189 (2d Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1356, 84 L.Ed.2d 378 (1985). The Indiana General Corporation Act permits the corporation to appoint an agent to produce the documents and avoid any possible testimonial acts by the petitioner. *Accord, Lang,* 792 F.2d at 1241; *In re Grand Jury Subpoenas Issued To Thirteen Corps.,* 775 F.2d at 47. It is clear that, under *Doe, Fisher,* and *Bellis* as well as the circuit court decisions except the Third Circuit, that the petitioner has no Fifth Amendment privilege which can be asserted to quash the subpoenas issued to the corporations.

Accordingly, and for all the above reasons, it is the ORDER of the Court that the petitioner's Motion to Quash Twenty-five (25) Grand Jury Subpoenas issued on October 21 and October 22, 1986 is hereby, DENIED. It is FURTHER ORDERED that the petitioner's Motion to Quash Seven

(7) Grand Jury Subpoenas dated December 3, 1986, be, and is hereby, DENIED.

SO ORDERED.